UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE |
|---|---|

| CONNIE LEE | LAURA ELIAS | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Tim Bekins, Pro Se<br>Tami Donald, Pro Se | Yuval Rogson |

**Proceedings:**      DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT [34]

## I.      INTRODUCTION

On June 12, 2015, plaintiffs Tim Bekins ("Bekins"), Tami Donald ("Donald"), and Reba Barber-Money ("Barber-Money"), proceeding *pro se*, initiated this action against defendants Jeff Becker ("Becker"), Dmitry Zheleznyak ("Zheleznyak"), Kristina Bucic, and Pavel Ryabov. Dkt. 1. In brief, plaintiffs allege that they were California-based sales representatives of Akvinta USA, Inc. ("Akvinta"), a vodka corporation, but that they were not paid their salaries or reimbursed for their expenses from the end of 2013 through 2015. Plaintiffs also allege that defendants Zheleznyak and Becker are the alter egos of Akvinta.

On October 9, 2015, plaintiffs filed a first amended complaint ("FAC") removing Pavel Ryabov as a defendant in this action. Dkt. 11. On November 2, 2015, the remaining defendants moved to dismiss this action on the grounds that, among other things, the FAC failed to name a necessary party—namely, Akvinta. Dkt. 15. On January 11, 2016, the Court granted this motion without prejudice and provided plaintiffs with leave to file an amended complaint naming Akvinta as a defendant in this action. Dkt. 29.

On January 14, 2016, plaintiffs filed the operative Second Amended Complaint ("SAC") against defendants Becker, Zheleznyak, and Akvinta (collectively, "defendants"). Dkt. 31. The SAC asserts claims for (1) breach of contract; (2) fraud; (3) deceit; (4) misrepresentation; (5) negligent misrepresentation; (6) breach of the covenant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

of good faith and fair dealing; (7) money had and received; (8) violation of California's Unfair Competition Law ("the UCL"), California Business & Professions Code § 17200, *et seq.* ; and (9) violation of the federal Fair Labor Standards Act ("FLSA").  Id.

On February 1, 2016, defendants filed the instant motion to dismiss and to strike the SAC.  Dkt. 34.  On February 29, 2016, plaintiffs filed an opposition, Dkt. 38, and on March 7, 2016, defendants filed a reply.  Dkt. 42.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

The SAC alleges the following facts:  On March 1, 2012, plaintiffs Bekins and Donald were hired to work for Akvinta, a vodka company, as sales managers in Southern California.  SAC ¶ 11.  Bekins and Donald were to be paid $5,000 and $6,000 per month respectively.  Id.  On June 15, 2013, plaintiff Barber-Money was hired as a sales manager in Northern California.  Id.  Barber-Money was to be paid $4,500 per month.  Id.  Donald was eventually promoted to California state manager and given a raise to $7,000.  Id.  Bekins was also promoted and given a raise to $5,750.  Id.  During the course of their work, plaintiffs were asked to use their own personal credit cards and cash to pay for company expenses.  Id. ¶ 12.  Plaintiffs were to be reimbursed for these expenses on a monthly basis.  Id.

Plaintiffs allege that as a result of their hard work, and the use of their credit cards and cash to pay for company expenses, Akvinta was able to reap $1,500,000 in revenue between 2013 and 2015 from California sales.  Id.  Nonetheless, plaintiffs assert that, beginning in the end of 2013 and continuing through 2015, their salaries were not paid and their expenses were not reimbursed.  Id.  In a series of emails and letters, Zheleznyak and Becker promised plaintiffs that they would compensate them for their unpaid wages and unreimbursed expenses.  Id. ¶¶ 16-29.  In these communications, defendants acknowledged that Akvinta was experiencing financial troubles, Id., Ex. G, but represented that Zheleznyak and Becker were exploring new financiers, Id., Ex. H, and explained that Zheleznyak planned to sell personal assets to cover Akvinta's obligations, Id., Ex. H.  Plaintiffs contend that, as of 2015, Bekins is owed $ 102,500 in unpaid salaries and $5,123 in unpaid expenses, Donald is owed $98,000 in unpaid salaries and $44,351 in unpaid expenses, and Barber-Money is owed $81,000 in unpaid salaries and $6,923 in unpaid expenses.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

Defendant Zheleznyak is the founder and chairman of Akvinta. Id. ¶ 4. Defendant Becker is the president of Akvinta. Id. ¶ 5. Plaintiffs allege that Zheleznyak and Becker are the alter egos of Akvinta and that Akvinta is, in reality, a sham corporation. Id. ¶ 10. Plaintiffs allege that revenue that was received by Akvinta was transferred first to a bank account in Croatia controlled by defendant Zheleznyak before being transferred to Akvinta's corporate bank account. Id. ¶ 10(a). However, plaintiffs contend that Zheleznyak would not deposit all of Akvinta's revenue into its corporate bank account, but instead would "siphon out" company revenues to pay himself, Becker, and other personal acquaintances. Id. Plaintiffs allege that Zheleznyak at times stated that he was going to capitalize Akvinta by selling some of his other assets in Croatia and that he used money from other business operations and his personal funds to cover Akvinta's basic operating expenses. Id. ¶¶ 10(h)-(g). Plaintiffs assert that, unbeknownst to them, at the time of their hiring, Akvinta was severely undercapitalized. Id. ¶ 10(i). Based on these and other allegations, plaintiffs allege that there exists a lack of "separateness" between defendants and Akvinta. Id. Accordingly, plaintiffs state that "adherence to the fiction of the separate corporate existence of Akvinta" would, under the circumstances of this case, promote injustice and prevent plaintiffs from recovering for their injuries. Id. ¶ 10(k).

## III.   LEGAL STANDARD

### A.   Motion to Strike

A motion to strike material from a pleading is made pursuant to Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The essential function of a Fed. R. Civ. P. 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. |

### B.    Motion to Dismiss for Failure to State a Claim

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title    | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.  ANALYSIS

### A.  Motion to Strike Alter Ego Allegations

In the SAC, plaintiffs contend that Zheleznyak and Becker are the alter egos of Akvinta, and that Akvinta is a sham corporation. Accordingly, plaintiffs seek to set aside Akvinta's corporate form and hold Zheleznyak and Becker directly liable for Akvinta's conduct. Defendants contend, however, that plaintiffs have failed to raise sufficient factual allegations to support alter ego liability and, therefore, move to strike plaintiff's alter ego allegations from the SAC.

The alter ego doctrine is a "sparingly used" exception to the general principle that a corporation "is separate and distinct from its stockholders, officers, and directors, with separate and distinct liabilities and obligations." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538, 539 (2000). Nonetheless, in certain situations, the doctrine provides a "procedural mechanism by which an individual can be held jointly liable for the wrongdoing of his or her corporate alter ego." Double Bogey, L.P. v. Enea, 794 F.3d 1047, 1051-52 (9th Cir. 2015). The purpose of this doctrine is to "prevent[ ] individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." Sonora Diamond Corp., 83 Cal. App. 4th at 539.

"California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL                                   'O'

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

'adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.' " In re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting Wood v. Elling Corp., 20 Cal. 3d 353, 364 n.9 (1977)); see also Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300 (1985). Both factors must be met to establish alter ego liability. Mesler, 39 Cal.3d at 300.

"Whether a party is liable under an alter ego theory is a question of fact" that depends on the "circumstances of each particular case." Leek v. Cooper, 194 Cal.App. 4th 399, 418 (2011); see also Baize v. Eastridge Cos., 142 Cal. App. 4th 293, 302 (2d Dist. 2006) ("There is no litmus test to determine when the corporate veil will be pierced."). However, factors courts have found relevant to the unity of interest analysis include: (1) the commingling of assets; (2) the treatment by an individual of corporate assets as his own; (3) the failure to obtain authority to issue stock; (4) the holding out by an individual that he is personally liable for the corporation's debts; (5) the failure to maintain minutes or adequate corporate records, or the confusion of the records of separate entities; (6) an identity of equitable owners, directors, or officers of multiple entities; (7) the sole ownership of all stock by one individual or the members of a family; (8) the use of the same office or business location for multiple entities; (9) the employment of the same employees or attorneys; (10) undercapitalization; (11) the disregard of legal formalities; (12) the use of a corporation as a mere shell or conduit for a single venture or the business of an individual or other entity; and (13) the contracting with another with intent to avoid performance by use of a corporate entity to shield against personal liability. Assoc. Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 838–40 (1962) (collecting cases). Courts have found "inadequate capitalization, commingling of assets, [and] disregard of corporate formalities" to be especially "critical." Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1285 (1994).

Even where there is a sufficient unity of interest, the alter ego doctrine cannot be invoked without evidence of misconduct or an injustice flowing from recognition of the separate corporate entity. Sonora Diamond Corp., 83 Cal. App. 4th at 530. Thus, the doctrine "does not guard every unsatisfied creditor but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." Id.

Based on the allegations in the complaint, the Court finds that, at least for purposes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

of the instant motion, plaintiffs have sufficiently alleged a unity of interest between Zheleznyak and Becker and Akvinta. Many of the relevant factors appear to be present in this case. For example, the SAC contains numerous allegations that Zheleznyak and Becker commingled their assets with the assets of Akvinta. See, e.g., SAC ¶10(a) ("Defendant Becker told Plaintiffs that revenue that was received for Akvinta USA went first to Zheleznyak's bank account in Croatia."); Id. ¶10(g) ("Defendants told Plaintiffs that Zheleznyak was going to fund Akvinta with $45 million of his personal money."). Plaintiffs also allege that Zheleznyak and Becker treated the assets of Akvinta as their own assets. See, e.g., Id. ¶10(a),(c) (asserting that after depositing Akvinta revenues into his Croatian bank account, Zheleznyak "siphoned out" corporate assets to his own bank accounts); Id. ¶10(a) ("Defendants . . . paid themselves and their friends with company revenue.").

Other allegations in the complaint suggest that Zheleznyak and Becker may have held themselves out as being personally liable for Akvinta's debts. See, Id. ¶10(e) ("Defendant Zheleznyak used personal assets to pay Plaintiffs, including a Western Union payment of $750 to each Plaintiff from his own personal funds. Zheleznyak would also give Plaintiff's cash out of his personal bank account to reimburse them for a monthly marketing program that Zheleznyak started. Becker gave [Barber-Money] $450 of his personal money."); Id. ¶10(h) ("Zheleznyak infused monies from other business operations and personal funds to cover basic operating expenses initially."). And plaintiff's allege that throughout their employment Akvinta was severely undercapitalized to the point where it was unable to pay its employees and distributors. See, e.g., ¶10(I) ("Unbeknownst to Plaintiff's at the time of their hiring, Akvinta USA was severely undercapitalized and unable to pay some creditors."); ¶10(d) ("Akvinta USA owes Plaintiffs over $350,000 and also owes its distributor over $150,000, among other creditors.").

Finally, the SAC contains at least one allegation indicating that Akvinta failed to follow the legal formalities of a corporation. Specifically, plaintiffs assert that in a corporate filing Akvinta identified Pavel Ryabov as the CEO of Akvinta. Id. ¶10(f). However, defendants have now disavowed Ryabov's involvement with Akvinta, describing him as merely an "unrelated business associate." Id. It is, at a minimum, suspicious that defendants would describe someone they one held out to be the CEO of their corporation as merely an "unrelated business associate." Taken together, the Court finds that these allegations are sufficient to support at least a plausible claim for setting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

aside Akvinta's corporate form.

Likewise, the Court finds that plaintiff has alleged facts which demonstrate that piercing the corporate veil is necessary to avoid an inequitable result. Plaintiffs assert that they advanced large sums of their own money on behalf of and for the benefit of Akvinta. Moreover, plaintiffs allege that they advanced this money, at least in part, in reliance on Zheleznyak and Becker's representations that they were willing to use their personal funds to reimburse plaintiffs and finance Akvinta. All the while plaintiffs allege that Zheleznyak and Becker were depositing Akvinta's corporate revenues into a bank account controlled by Zheleznyak and then, allegedly, siphoning off those revenues for their personal benefit. Accordingly, in this case, adherence to the corporate form could shield Zheleznyak and Becker from liability while simultaneously allowing them to profit off the work and funds of plaintiffs. These allegations constitute the sort of "conduct amounting to bad faith [that would] make[ ] it inequitable for the corporate owner to hide behind the corporate form." See Sonora Diamond Corp., 83 Cal. App. 4th at 530.

Accordingly, the Court finds that plaintiffs' have sufficiently pleaded facts that could give rise to alter ego liability. The Court, therefore, DENIES defendants' motion to strike the alter ego allegations in the SAC.

**B.      Motion to Dismiss Claims for Breach of Contract**

Defendants move to dismiss plaintiff's first claim for breach of contract. To state a claim for breach of contract, a plaintiff must show: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to the plaintiff. See Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011). Defendants argue that plaintiffs' claim for breach of contract must fail because plaintiffs have failed to identify the parties to the relevant contract or contracts which form the basis of plaintiffs' breach of contract claim. In other words, defendants appear to be arguing that plaintiffs have failed to satisfy the first element of a claim for breach of contract—the existence of a contractual relationship.

However, the SAC clearly states that "Plaintiffs entered into contracts to work for Defendants and Akvinta USA in 2012 [Bekins and Donald] and 2013 [Barber-Money]." SAC ¶ 35. And it is at least implicit from the allegations in the SAC that all three plaintiffs had an oral agreement with Akvinta to serve as sales representatives for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title    | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

Akvinta. Moreover, plaintiffs have supported their claim with specific allegations regarding the terms of their agreement with defendants, including their monthly salaries and the circumstances under which they were to be reimbursed for their expenses. Id. ¶¶ 11-12. The SAC also lists over three dozen meetings between Zheleznyak, Becker, and plaintiffs in which the parties purportedly conducted business for Akvinta. See Id. ¶¶ 14(a)-14(oo). In several of these meetings, plaintiffs allege that they conducted sales calls, see, e.g., id. ¶¶ 11(f)-(g), (r), collected "product" from a warehouse Zheleznyak and Becker rented, id. ¶ 11(mm), and received marketing materials from Becker, id. ¶ 11(nn). These allegations are consistent with plaintiff's claim that they had an oral agreement with defendants to serve as sales representatives for Akvinta. Accordingly, the Court finds that, contrary to defendants' argument, plaintiffs have sufficiently pleaded the existence of a contractual relationship—namely, that all of the plaintiffs had an oral agreement with Akvinta to serve as sales representatives in California.

Defendants also argue that, as the officers and directors of Akvinta, Zheleznyak and Becker cannot be held individually liable for Akvinta's breach of contract. However, this argument fails to acknowledge plaintiffs' allegations that Zheleznyak and Becker are liable for Akvinta's obligations under an alter ego theory. As explained above, the Court finds that at this stage plaintiffs have sufficiently pleaded a claim for alter ego liability. Accordingly, defendants' argument is unavailing.

For the foregoing reasons, defendants' motion to dismiss plaintiffs' breach of contract claim is DENIED.

### C.    Motion to Dismiss Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants move to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is a duty imposed on every party to a contractual relationship. See Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 478 (1989) ("[E]very contract imposes upon the contracting parties the duty of good faith and fair dealing."). Defendants first attempt to defeat plaintiffs' claim by arguing, again, that the SAC fails to allege the existence of a contract and that, in any event, Zheleznyak and Becker should not be held individually liable for any alleged breach of that contract by Akvinta. However, as discussed above, the Court has already rejected both of these arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

Defendants also argue that plaintiffs' claim for breach of the implied covenant of good faith should be dismissed because it is redundant of their breach of contract claim. Id.  In general, where "the allegations [in an implied covenant claim] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990).

In the SAC, plaintiffs make two allegations in support of their implied covenant claims: (1) that defendants breached the covenant when they used money that "should have gone to Plaintiffs for themselves" and (2) that Becker asked plaintiffs to "keep communication with Defendants" confidential, which plaintiffs contend, prevented them from consulting with legal counsel.  SAC ¶¶ 54-55.  The first of these allegations is essentially an allegation that defendants failed to pay plaintiffs their salaries or reimburse them for their expenses—in other words, that defendants breached the terms of their contract with plaintiffs.  Thus, this allegation does not "go beyond the statement of a mere contract breach." Careau, 222 Cal. App. 3d, at 1395 (2d Dist. 1990); see also Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 353, 327 (2000) (stating that, "where breach of an actual [contract] term is alleged, a separate implied covenant claim, based on the same breach, is superfluous").

The second allegation, on the other hand, is arguably an additional claim that goes beyond the terms of the parties' contract—"confidentiality" is not alleged to be a term or requirement of the underlying contract.  Nonetheless, it is not clear how this allegation would support a claim for breach of the implied covenant of good faith and fair dealing. The implied covenant imposes on each party to a contract: (1) "the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own"; and (2) "the duty to do everything that the contract presupposes that he will do to accomplish its purpose." Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1093 (2004).  Here, plaintiffs fail to explain how Becker's instruction that they "keep communication with Defendants confidential" in any way interfered with the performance or purpose of the parties' agreement.

Accordingly, the allegations plaintiffs have raised in support of their claim for breach of the implied covenant of good faith and fair dealing are either redundant with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

their breach of contract claim or do not support a claim for breach of the implied covenant.  The Court, therefore, GRANTS defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### D.   Motion to Dismiss Claims for Money Had and Received

Defendants next move to dismiss plaintiffs' claim for money had and received. Under California law, a claim for money had and received "lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." Gutierrez v. Girardi, 194 Cal.App.4th 925, 937 (2d Dist. 2011).  Money had and received has been described as "a form of restitution that applies when [] unjust enrichment occurred thanks to a contract or other transfer of 'a definite sum.' " Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014). The "three essential elements of the claim are: (1) the defendant received money, (2) the money received by the defendant was for the use of the plaintiff and (3) the defendant is indebted to the plaintiff." Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co., 2000 WL 1721080 *8 (N.D. Cal. Nov. 7, 2000) (citing Schultz v. Harney, 27 Cal. App. 4th 1611, 1623 (Cal. Ct. App. 1994)).

Typical applications of claims for money had and received involve cases where the plaintiff directly paid money to the defendant under a contract which is later breached or voided.  See Brown v. Grimes, 192 Cal. App. 4th 265, 281 (Cal. Ct. App. 2011) (claim for money had and received available "where there has been a total breach—i.e., total failure of consideration or repudiation"); Schultz, 27 Cal.App.4th at 1623 (upholding the claim in a case where "the plaintiff has paid money to the defendant pursuant to a contract which is void for illegality").

In the SAC, plaintiffs allege that they "used their time and money to help generate revenue of over $1,500,000 in California" for defendants.  SAC ¶ 57.  Plaintiffs seem to be claiming that, given that defendants have failed to compensate plaintiffs for their efforts, the revenues they generated should now rightfully belong to plaintiffs.  The Court finds that these allegations do not align with a claim for money had and received.  What plaintiffs are attempting to assert is that, as a result of their efforts and the money they expended for the benefit of Akvinta, defendants have been unjustly enriched in the amount of their California revenues—i.e., $1,500,000.  However, while a claim for money had and received is perhaps analogous to a claim for unjust enrichment, the two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|---------------------|------|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

claims are distinct. Specifically, a claim for money had and received only applies in cases where a defendant has received money that is intended to be used by the plaintiff or for the benefit of the plaintiff. See 4 Witkin, Cal. Proc. 5th (2008) Pleadings, § 561 ("The count for money had and received states in substance that the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant *for the use of the plaintiff*.") (emphasis added) (citations and internal quotations omitted). Thus, California courts have applied claims for money had and received where the defendants misappropriated commissions that were earned by and belonged to the plaintiff, Fox v. Monahan, 8 Cal. App. 707 (Cal. Ct. App. 1908), where funds belonging to the plaintiff were given to the defendant for safekeeping, Coombs v. Minor, 60 Cal. App. 2d 491 (Cal. Ct. App. 1943), and where the defendant received funds in the settlement of a lawsuit to which his lawyer was contractually entitled, Weiss v. Marcus, 51 Cal. App. 3d 590 (Cal. Ct. App. 1975).

Here, by contrast, plaintiffs cannot claim any entitlement to the $1,500,000 in revenues defendants purportedly earned as a result of plaintiffs' efforts. Plaintiffs have not alleged any provisions in their employment agreements, or any other contract, which would permit them to state a claim to these revenues. See also Murphy v. Am. Gen. Life Ins. Co., 74 F. Supp. 3d 1267, 1280 (C.D. Cal. 2015) ("There must be an allegation that the defendant has received money *which belongs to the plaintiff*") (emphasis added). And, most significantly, plaintiffs cannot claim that these revenues were "received by [defendants] *for the use of [plaintiffs]*." See also Fireman's Fund, 2000 WL 1721080, at *8 ("Plaintiffs have not pointed to evidence that . . . any portion of the $27,264,500 received by defendant from third party insurers was for the use of plaintiffs"). Accordingly, the Court finds that plaintiffs have failed to state a claim for money had an received.

Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' claim for money had and received.

## D.    Motion to Dismiss Claims for Fraud-Based Claims

Defendants move to dismiss plaintiffs' claims for fraud, deceit, misrepresentation, and negligent misrepresentation. Under California law, "the elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631 (1996). The elements of a cause of action for negligent misrepresentation are the same as those for a claim for fraud, with the exception that the defendant need not actually know that the representation is false. Rather, to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true. See Yamauchi v. Cotterman, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) ("In California, the elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.") (citing Ragland v. U.S. Bank Nat. Assn., 209 Cal. App. 4th 182, 196 (2012)).

In addition, claims "grounded in fraud" or "sounding in fraud", such as plaintiffs claims for fraud, deceit, and misrepresentation, are governed by Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting a claim for fraud be pled with particularity. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).[1] A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the

---

[1] Defendants contend that plaintiffs' claim for negligent misrepresentation is also governed by Rule 9(b). There is some disagreement amongst courts regarding whether claims for negligent misrepresentation must satisfy 9(b). See Valencia v. Wells Fargo Home Mortgage Inc., 2014 WL 5812578 (N.D. Cal. 2014) ("The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but most district courts in California hold that it does.") (quoting Villegas v. Wells Fargo Bank, N.A., 2012 WL 4097747, at *7 (N.D. Cal. 2014)). Some courts have held that where a negligent misrepresentation claim is "grounded in fraud," Rule 9(b) applies. See,e.g., Vess, 317 F.3d at 1103–04 ("The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct."); but see Petersen  v. Allstate Indem. Co., 281 F.R.D. 413, 418 (C.D. Cal. 2012) ("[B]ecause an allegation of negligent misrepresentation suggests only that the defendant failed to use reasonable care—an objective standard—it does not result in the kind of 'harm' that Rule 9(b) was designed to prevent."). Here, plaintiffs' claim for negligent misrepresentation is predicated on the same representations as their claims for fraud, deceit, and misrepresentation. And, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

In the SAC, plaintiffs allege that defendants fraudulently induced them to continue working and advancing their own money on behalf of Akvinta by promising plaintiffs that they would eventually be repaid and that Zheleznyak and Becker intended to finance Akvinta with their personal funds. Plaintiffs have identified numerous statements in which defendants represented to plaintiffs that payment would be forthcoming. For example, in an email plaintiffs have attached to the SAC, Zheleznyak writes to plaintiffs: "I would like to inform you that our (my) problems are finally over. All outstanding bills will be taken care of starting Monday, October 14th." SAC, Ex. F. In another email, dated May 27, 2014, Becker writes to plaintiffs: "[Zheleznyak will] again try and finalize the deal he told you about several weeks ago, that is supposed to bring a large cash infusion into the Company and repay all of you what is owed." Id., Ex. H. Many of these emails contain dates, times, and the names of the senders and recipients.

Plaintiffs have also noted several instances in which Becker and Zheleznyak represented that Zheleznyak intended to sell various properties he owned in Croatia in order to pay plaintiffs. See, e.g., SAC ¶ 17 ("In 2014, Zheleznyak and Becker told Plaintiffs that Zheleznyak owned a a condominium complex in Split, Croatia valued at $8 million dollars and that when it was sold, Plaintiffs would be paid."); Id. ("Zheleznyak and Becker also told Plaintiffs that Zheleznyak owned part of the Port of Split, Croatia and that Zheleznyak was to be paid a large amount of money from this operation in September 2014, and when Zheleznyak received this, Plaintiffs would be paid."); Id. ("Zheleznyak and Becker also told Plaintiffs that Zheleznyak owned a warehouse in Split,

---

discussed *infra*, the Court finds that theses representations are pleaded with the level of particularity required by Rule 9(b). Accordingly, the Court finds that, even if it were to apply the more stringent standards of Rule 9(b), plaintiffs have adequately stated a claim for negligent misrepresentation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|----|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

Croatia and was going to sell this in 2014 to pay plaintiffs."). Plaintiffs also allege that Zheleznyak and Becker told them that Akvinta was going to receive a "bridge loan" and that Zheleznyak had borrowed $50,000 from friends to pay some of the money owed to plaintiffs. Id. Plaintiffs allege that each of these representations was false and note that, despite defendants constant assurances to the contrary, beginning in the end of 2013 and continuing through 2015, their salaries were not paid and their expenses were not reimbursed. Moreover, plaintiffs note that the purported property sales and loans, which Zheleznyak and Becker so frequently touted, never materialized.

Based on these allegations the Court finds that the SAC sufficiently identified "the "circumstances constituting fraud" such that defendants are on notice of their purportedly fraudulent conduct. Plaintiffs have identified which statements were purportedly false, who made those statements, how those statements were false, and have even gone so far as to attach numerous emails containing the purportedly false statements as well as date and time stamps. This is enough to satisfy Rule 9(b).

Defendants argue that, notwithstanding these allegations, plaintiffs have failed to allege with particularity that defendants' representations were false or that defendants should have known they were false. Defendants argument misses the mark. First, while Rule 9(b) requires that the "circumstances" of fraud be pled with particularity, the Rule permits that other elements of a fraud claim, such as knowledge, may be alleged generally. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, *knowledge, and other conditions of a person's mind may be alleged generally.*") (emphasis added); See also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."); Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (Rule 9(b)'s heightened pleading standard not applicable to averments of knowledge). Accordingly, plaintiffs do not need to allege with particularity that defendants had knowledge that their representations were false.

Moreover, and in any event, the Court finds that plaintiffs have alleged facts from which it can at least be inferred that Zheleznyak and Becker knew their representations to plaintiffs were false. Specifically, over the course of nearly two years, Zhelznyak and Becker repeatedly assured plaintiffs that payment would be forthcoming and that diligent efforts were being made to raise funds by either selling Zheleznyak's properties in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

Croatia or obtaining a loan for Akvinta.  Nonetheless, payments were not forthcoming at any point from the end of 2013 to the present, and the investments with which defendants promised to reimburse plaintiffs never materialized.  Based on these facts, the Court may infer that it is at least plausible that defendants knew that their representations to plaintiffs were false and that, perhaps, defendants had no intention of paying plaintiffs for their salaries and expenses.

Accordingly, the Court finds that plaintiffs have adequately stated each of their fraud-based claims.  Defendants' motion to dismiss these claims is, therefore, DENIED.

**F.     Motion to Dismiss Claims for Unlawful and Unfair Business Practices**

Defendants move to dismiss plaintiffs claim for violation of the UCL.  To state a claim for unfair competition pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq., a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (Cal. Ct. App. 2011) (internal quotation marks and citation omitted).

In the SAC, plaintiffs principally allege that defendants "failure to pay legally required compensation" constitutes a violation of the UCL.  Defendants correctly note that this allegation is, in essence, identical to plaintiffs claim for breach of contract.  Defendants contend that it is impermissible for plaintiffs to bring a claim under the UCL based merely on a breach of contract.  However, a breach of contract may form the basis for a UCL claim if "*it also constitutes conduct that is '*unlawful, or unfair, or fraudulent.*'* " Puentes v. Wells Fargo Home Mtg., Inc., 160 Cal. App. 4th 638, 645 (2008) (emphasis in original).

Here, plaintiffs assert that defendants' failure to reimburse them for their expenses violated provisions of the California labor code.  Id. ¶¶ 61-62.  And plaintiffs contend that defendants never purchased workers compensation insurance and that this too violated the California labor code.  Id. ¶ 62.  A violation of the California labor code may form the basis for a claim under the "unlawful" prong of the UCL.  See also Multimedia Patent Trust v. Microsoft Corp., 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007) ("[A]n 'unlawful' business act or practice is one that is prohibited by law, where possible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

sources of law are defined broadly."); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003) ("[The UCL] 'borrows' violations from other laws by making them independently actionable as unfair competitive practices.").

In the SAC, plaintiffs contend that defendants have violated California Labor Code § 2802(a), which requires an employer to indemnify his or her employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." While defendants' failure to reimburse plaintiffs for their expenses may also form the basis of plaintiffs' breach of contract claim, this conduct is still actionable under the UCL because it "also constitutes conduct that is 'unlawful.' " Puentes, 160 Cal. App. 4th at 645. Plaintiffs also contend that defendants have violated California Labor Code § 3700, which requires an employer, among other things, to carry workers compensation insurance. Plaintiffs contend that, throughout their employment, "defendants never purchased workers compensation insurance." This conduct is both 'unlawful' and entirely distinct from the allegations supporting plaintiffs' claim for breach of contract.[2] Accordingly, in the SAC plaintiffs have identified at least two provisions of the California Labor Code that defendants' conduct may have violated. This is sufficient to state a claim under the 'unlawful' prong of the UCL.

Furthermore, under the "unfair" prong, a business practice violates the UCL where it either "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984), abrogated on other grounds by Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 186–87 & n.12 (1999)); accord McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). As explained supra, plaintiffs have plausibly alleged that defendants fraudulently induced them to continue working and advancing money for Akvinta, but then failed to compensate plaintiffs or reimburse them for their efforts. This conduct is arguably "immoral," "unethical," or "unscrupulous." Likewise, to the extent defendants'

---

[2] Defendants contend that plaintiffs have not shown any harm arising from defendants' alleged failure to carry workers' compensation insurance. However, plaintiffs' have alleged that Donald suffered an injury while working in January of 2014, and was forced to cover her own medical bills due to the lack of workers' compensation insurance. See SAC ¶ 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|----------|--------------------|------|----------------|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

failure to compensate plaintiffs or carry workers compensation insurance violated the California labor code, defendants' conduct arguably violated the "established public policy" embodied in California's labor code. Accordingly, plaintiffs have stated at least a plausible claim under the "unfair" prong of the UCL as well.[3]

The Court, therefore, DENIES defendants' motion to dismiss plaintiffs' claim for violation of the UCL.[4]

**H.    Motion to Dismiss Claims for FLSA Violations**

Finally, defendants move to dismiss plaintiffs' claim for violations of the FLSA. "The FLSA regulates, as a general matter, the minimum wages paid to workers" and provides for overtime compensation for any non-exempt employee "who works more than forty hours a week." Dent v. Cox Commc'ns. Las Vegas, Inc., 502 F.3d 1141, 1143 (9th Cir. 2007). Specifically, the FLSA requires employers to pay wages of at least $7.25 per hour to any employee covered by the FLSA, and to pay such employees one and one-half times his or her regular wage for any hours over forty worked in a given week. 29 U.S.C. § 206 (minimum wage); 29 U.S.C. § 207 (overtime). In the SAC, plaintiffs'

---

[3] Defendants also argue that plaintiffs UCL claim "fails principally because it does not allege any deception on 'members of the public.' " Mot., at 10. To be actionable under the "fraudulent" prong of the UCL, conduct must involve a deception of "members of the public." See Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 618 (Cal. Ct. App. 1996) (" 'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.' ") (citations omitted). However, as explained above, plaintiffs have stated plausible claims under the unfair and unlawful prongs of the UCL. Accordingly, even if plaintiffs have failed to state a claim under the "fraudulent" prong of the UCL, they still have a viable claim under the other two prongs of the UCL.

[4] In their motion, defendants argue that defendants Zheleznyak and Becker cannot be held individually liable for violations of the California Labor Code, which generally only permits liability against an "employer." However, as already explained, plaintiffs are asserting that Zheleznyak and Becker are liable for the conduct of Akvinta, plaintiffs' purported employer, on a theory of alter ego liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. |

asserts that defendants violated the FLSA by failing to pay plaintiffs' wages and expenses. SAC ¶ 66. Reading the SAC in the light most favorable to plaintiffs, plaintiffs have ostensibly asserted a claim that, by not paying *any* wages, defendants have violated the FLSA by failing to pay the federal minimum wage.

However, the FLSA contains a number of exemptions to its minimum wage and overtime requirements, including for "outside salesmen." See 29 U.S.C. § 213(a)(1). Plaintiffs apparently do not dispute that their employment with Akvinta falls within the exemption for "outside salesmen." See Opp'n at 36-37.[5] Plaintiffs, nevertheless, contend that, pursuant to the FSLA, even exempt employees "must receive the full salary for any week in which the employee performs any work." For this proposition plaintiffs cite only a Department of Labor Fact Sheet. See Dep't of Labor Fact Sheet #17G, *available at* http://www.dol.gov/whd/overtime/fs17g_salary.pdf. However, plaintiffs misinterpret this

---

[5] 29 C.F.R. § 541.500 provides that "[t]he term 'employee employed in the capacity of outside salesman' in section 13(a)(1) of the Act shall mean any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act; or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a)(1); See also Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2170 (2012) ("[Section 541.500] defines an outside salesman as an employee whose primary duty is 'making sales.' . . ."). In the SAC, plaintiffs repeatedly state that they worked for defendants as "sales representatives" and describe their job duties as, in large part, making "sales calls" throughout California. See, e.g., SAC ¶¶ 11(f)-(g), (r). Accordingly, plaintiffs' employment with defendants would seem to fall squarely within the description of an "outside salesmen."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
| --- | --- | --- | --- |
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

fact sheet. The fact sheet provides that in order to qualify as an exempt employee under the FLSA an employee must be paid on a "salary basis." Id. The fact sheet then goes on to explain that "salary basis" means that an employee is paid at least $455 per week and that to be considered exempt from the FLSA an employee "must receive the full salary [i.e. $455 per week] for any week in which the employee performs any work." Id. However, crucially, the fact sheet states: "These salary requirements *do not apply* to outside sales employees." Id. (emphasis added). Thus, contrary to plaintiffs' interpretation, this fact sheet does not require defendants to pay plaintiffs a salary for "any week in which [plaintiffs] perform[ed] any work."

Accordingly, plaintiffs are exempt from the FLSA's minimum and overtime wage requirements and cannot state a claim under the FLSA. See also Perez v. Wells Fargo & Co., 75 F. Supp. 3d 1184, 1187 (C.D. Cal. 2014) ("[T]he only claims that are actionable under the FLSA are claims that the employer failed to pay the federal minimum wage, and claims that the employer failed to pay overtime when the employee worked more than 40 hours in a given week."). The Court, therefore, GRANTS defendants' motion to dismiss plaintiffs' claim for violation of the FLSA. Moreover, because the Court finds that plaintiffs are exempt from the FLSA's wage requirements, it GRANTS defendants' motion to dismiss plaintiffs FLSA claim WITH PREJUDICE as any amendment would appear to be futile.

**V.      CONCLUSION**

In accordance with the foregoing, the Court **GRANTS in part and DENIES in part** defendants' motion to strike and motion to dismiss.[6] Specifically, the Court

---

[6] Defendants also moved to dismiss all of plaintiff Barber-Money's claims related to unpaid wages and expenses. Specifically, defendants argued that, prior to filing this suit, Barber-Money had filed a complaint against Akvinta with the California Department of Labor Standards Enforcement ("DLSE"), on which she eventually received an judgment in the amount of $63,040.68. Defendants' contended that this award barred Barber-Money's claims in this action to the extent she was seeking to recover her unpaid wages and expenses from Akvinta. However, on March 16, 2016, plaintiffs filed a notice of settlement stating that Barber-Money and defendants had reached a settlement agreement. Dkt. 43. Accordingly, the Court does not reach defendants' argument regarding the effect of Barber-Money's DLSE award on her claims in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | CV15-4478-CAS(ASx) | Date | March 21, 2016 |
|---|---|---|---|
| Title | TIM BEKINS, et al v. DMITRY ZHELEZNYAK, et al. | | |

**GRANTS WITHOUT PREJUDICE** defendants' motion to dismiss plaintiffs's claims for breach of the implied covenant of good faith and fair dealing and for money had and received.  The Court **GRANTS WITH PREJUDICE** defendants' motion to dismiss plaintiffs' claim for violation of the FLSA.  The Court **DENIES** defendants' motion in all other respects.  If plaintiffs believe that they may cure the deficiencies in their claims for breach of the implied covenant of good faith and fair dealing and for money had and received, they are hereby granted **thirty days (30)** in which to file an amended complaint addressing the deficiencies in those claims.  Failure to file an amended complaint may result in dismissal of these claims with prejudice.

IT IS SO ORDERED

|  | 00 | : | 06 |
|---|---|---|---|
| Initials of Preparer | | CL | |